**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| SURVIVAL FLIGHT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| HAROLD NEWTON ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES

Plaintiff Survival Flight, Inc. ("Survival Flight") states for its Complaint for Injunctive Relief and Monetary Damages against Defendant Harold Newton ("Newton"), as follows:

## PARTIES

1. Plaintiff Survival Flight, Inc. is an Arizona corporation incorporated in Arizona and with its principal place of business located at 50 N. McClintock Drive, Suite 1, Chandler, Arizona 85226.

2. Survival Flight operates from strategically placed base locations to provide rapid response emergency medical air and ground transportation services to communities and hospitals across the United States. Survival Flight has had business operations in Tennessee since 2023.

3. Defendant Harold Newton ("Newton") is a citizen and resident of Lawerence County, Tennessee and resides at 374 Henryville Road, Ethridge, Tennessee 38456.

4. Defendant Newton worked for Survival Flight as Director of Business Operations from August 2019 until April 14, 2026.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §1332(a) because: (1) there is complete diversity of citizenship between Survival Flight and Defendant Newton; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper under 28 U.S.C. §1391(b)(1) because Defendant Newton resides in and was employed by Survival Flight in this district and Survival Flight conducts operations in this district. Alternatively, venue is proper under 28 U.S.C. §1391(b)(3).

## FACTUAL BACKGROUND

7.      Survival Flight is a national leader in the air ambulance industry. It currently operates from base locations in Alabama, Arkansas, Florida, Georgia, Illinois, Missouri, Oklahoma, and Tennessee and has plans for additional bases in North Carolina and other markets across the United States. Each base location is staffed with highly trained medical professionals and equipped with advanced aircraft and EMS units to ensure rapid response and the highest level of emergency medical services.

8.      Survival Flight's growth and business operations are built on leveraging its industry relationships with current and/or potential customers with the goal of establishing helicopter and ambulance bases to service communities and/or enter into agreements to serve air and/or ground ambulance needs of the local market.

**A.      Defendant Newton's Employment with Survival Flight**

9.      Survival Flight engaged Defendant Newton in or around August 2019 to serve as Director of Business Development for Survival Flight.

10. As the Director of Business Development for Survival Flight, Defendant Newton was a primary contact for Survival Flight's central existing and prospective customers, subsidiaries, and other key industry contacts.

11. On August 15, 2019, Defendant Newton voluntarily and knowingly entered into a Consulting Services Agreement ("Consulting Agreement") with Survival Flight. (*See* Ex. 1).

12. Because Survival Flight's confidential and proprietary information would be shared with Defendant Newton, and since he would be interacting daily with Survival Flight's existing and potential industry contacts and customers, a condition of Defendant Newton's engagement was entering into a Consulting Services Agreement containing, among other things, confidentiality, non-solicitation, and non-competition provisions—which Defendant Newton executed on August 12, 2019. (*Id.*).

13. As Director of Business Development, Defendant Newton was responsible for, among other things, establishing, maintaining, and growing relationships and opportunities with customers and prospective customers with whom Survival Flight had placed or was attempting to place air and ground ambulance base operations or negotiate agreements for ambulance services, and became intimately familiar with Survival Flight's needs and preferences.

14. Defendant Newton's job duties with Survival Flight also included establishing "site development opportunities, marketing services support, local resources . . . at the direction of SURVIVAL FLIGHT, INC., regarding the demonstration of products offered by SURVIVAL FLIGHT, INC." In addition, Defendant Newton's duties included: "(1) [i]dentify[ing] and meet[ing] Customers;" (2) "[p]rovid[ing] customer lists, points of contact, customer information, and marketing plans and strategies;" and (3) "[g]ather[ing] additional data as may be needed for Senior Leadership of Survival Flight, Inc. to make base operation decisions." (*Id.*).

3

15. Additionally, Defendant Newton agreed that:

> during relationship pursuant to this Agreement and for a period of one (1) year following termination of this Agreement, however caused, [he] will not hire or take away or cause to be hired or taken away any employee of SURVIVAL FLIGHT, INC. or, following termination of the Agreement, any employee who was in the employ of the consultant during the twelve (12) months preceding the termination, nor shall SURVIVAL FLIGHT, INC. take away any employee of Consultant as specified above.

(*Id.* ¶ 22).

16. Defendant Newton also agreed that:

> he will not directly or indirectly solicit or accept business from customers or potential customers of SURVIVAL FLIGHT, INC. that are in competition with goods or services provided by SURVIVAL FLIGHT, INC. and/or SURVIVAL FLIGHT, INC. during the term of this Agreement or for a period of two (2) years following the termination of this Agreement, however cause.

(*Id.*, ¶ 23).

17. By entering into the Consulting Agreement, Defendant Newton confirmed and understood "SURVIVAL FLIGHT, INC's interests that in pursuing this Agreement, SURVIVAL FLIGHT, INC.'s clients do not place [Defendant Newton] in conflict of interest, and [Defendant Newton] will inform SURVIVAL FLIGHT, INC. if such conflict is likely to arise." (*Id.*, ¶ 24).

18. Defendant Newton further confirmed that "SURVIVAL FLIGHT, INC. acknowledges and agrees that [Defendant Newton] is actively marketing SURVIVAL FLIGHT, INC.'s products in the USA." (*Id.*, ¶ 25).

19. Survival Flight expended countless hours, funds, and resources to provide Defendant Newton with the critical tools and resources to perform his duties, and introductions to key industry contacts. Survival Flight provided Defendant Newton with the resources to develop business and goodwill on behalf of the company through access to its customers, prospective customers, subsidiaries, key industry contacts, and the financial resources to develop these relationships.

4

20. Defendant Newton continued his engagement working for Survival Flight after the expiration of the initial term in the Consulting Agreement. From August 2019 through April 14, 2026, Defendant Newton and Survival Flight continued performing under the terms of the Consulting Agreement.

**B.      Defendant Newton's pre-termination misconduct**

21. On or about June 14, 2024, Survival Flight employees Chief Pilot Heath Beecher, Director of Operations Robert Thorpe, and Tennessee Pilot Jesse Moats created a business entity called "Rotor One Air Medical, Inc." ("Rotor One") in Wisconsin. (*See* Ex. 2, Rotor One SOS Registration Wisconsin).

22. Heath Beecher, Robert Thorpe, and Jesse Moats are identified as Directors of Rotor One in the Annual Report dated September 10, 2025, on file with the Wisconsin Secretary of State. (Ex. 4, Rotor One Annual Report).

23. Evidence that was recently discovery from Defendant Newton's Survival Flight email account shows he began working with Rotor One with the intent to create a new air ambulance business in direct competition with Survival Flight. (*See* Ex. 3, 9/5/24 Newton Email).

24. On or about August 30, 2024, while still working for Survival Flight and unbeknownst to Survival Flight, Defendant Newton engaged a marketing firm to promote Rotor One including in various markets where Survival Flight actively operates, including Rome, Georgia, Foley, Alabama, Dothan, Alabama, and Panama City, Florida, in direct competition with Survival Flight. (*See* Ex. 3; Ex. 5, Aha! Creative Marketing Proposal, p. 6).

25. Defendant Newton was conducting competitor business on Survival Flight business time. (*See e.g.*, Ex. 3).

5

26. Sometime after August 2024, Survival Flight employees Heath Beecher, Robert Thorpe, and Jesse Moats expressed to Defendant Newton that they were no longer were interested in pursuing an air ambulance business with Rotor One and, upon information and belief, Rotor One remained dormant for several years.

27. On June 20, 2025, Defendant Newton created a business entity called "Blue Lake Holdings, LLC" in Alabama. (*See* Ex. 6, Blue Lake Holdings SOS Registration Alabama). Upon information and belief, Defendant Newton formed Blue Lake Holdings to operate as an air ambulance company to directly and unfairly compete with Survival Flight.

28. Defendant Newton is identified as the Organizer of Blue Lake Holdings, LLC in its Certificate of Formation dated June 20, 2025, that he filed with the Alabama Secretary of State. (*See* Ex. 7, Blue Lake Holdings Certificate of Formation).

29. In or around August 2025, Defendant Newton provided Survival Flight Senior Leadership with a proposal for a potential base operation in Eufaula, Alabama. Survival Flight Senior Leadership did not approve of the operation and instructed Defendant Newton not to pursue the opportunity.

30. On September 5, 2025, about one week after Senior Leadership directed Defendant Newton not to pursue a Eufaula, Alabama base, Defendant Newton wrote to the Mayor of Eufaula, Alabama misrepresenting that Survival Flight would be establishing operations in that market, despite him not having authority to do so and against Survival Flight's interests. (Ex. 8, 9/5/25 Newton Letter to Eufaula, AL Mayor). Specifically, Defendant Newton stated:

> I am writing on behalf of Survival Flight to express our deepest gratitude for your unwavering support and exceptional dedication in bringing Survival Flight to your community. This milestone represents not only a tremendous step forward in healthcare accessibility but also a testament to your vision, leadership, and commitment to the well-being of every individual who calls this region home.

6

The arrival of Survival Flight in Eufaula and Barbour County is nothing short of transformative…The presence of Survival Flight brings with it a renewed sense of security—a reassurance that, should the unthinkable occur, help is only moments away. Your advocacy and determination to make this a reality have forever changed the landscape of emergency care in your area.

Your efforts to secure Survival Flight did not go unnoticed…

It takes visionary leadership to recognize the unique needs of a community and act decisively to address them. In brining Survival Flight to Eufaula and Barbour County, you have not only elevated the standards of emergency responses, but you have also set a powerful example for neighboring communities…

The ripple effects of this achievement will be felt for generations. Survival Flight's presence ensures that trauma victims, cardiac emergencies, stroke patients, and those facing other life-threatening conditions will receive prompt, expert medical care…

We also wish to acknowledge the collaborative spirit you fostered throughout this process. Brining Survival Flight to your area required cooperation across multiple sectors…

…The story of Survivor Flight's arrival is yet another chapter in your ongoing legacy of service…

…Survival Flight's presence paves the way for further advancements in healthcare, emergency preparedness, and community safety.

(Ex. 8).

31.     On or about March 20, 2026, while still working for Survival Flight, Defendant Newton fraudulently and/or improperly obtained a National Provider Identifier ("NPI") number on behalf of Rotor One, without the authority of Rotor One Directors. NPI numbers serve as unique identifiers for healthcare providers and are required on all electronic HIPAA-standard administrative and financial transactions. Ambulance companies are required to have NPIs to provide medical transportation and bill insurers. Defendant Newton identified himself to the National Plan and Provider Enumeration System (NPPES) NPI Registry as the Chief Operating

7

Officer of Rotor One and identified his home address as Rotor One's mailing address. (*See* Ex. 15, NPPES NPI Registry for Rotor One). By securing the NPI number, Defendant Newton impermissibly enabled himself to bill Medicare, Medicaid, and other third-party payment providers on behalf of Rotor One.

32. Defendant Newton misrepresented himself to the NPPES as the Chief Operating Officer of Rotor One, despite not being an employee, contractor, or agent of Rotor One.

33. By obtaining the NPI number, Defendant Newton intended to operate an air ambulance company in Rotor One's name and in direct competition with Survival Flight.

34. In or around February or March 2026, Survival Flight Senior Leadership began developing a business relationship for a potential base operation in Washington County, Florida ("Washington County"). Around the same time, Defendant Newton began communications with the neighboring county, Holmes County, Florida ("Homes County"), and had a meeting scheduled to discuss establishing an air base in Holmes County.

35. After Survival Flight Senior Leadership discovered Defendant Newton's communications with Holmes County, they requested Defendant Newton's meeting with Holmes County be cancelled to avoid damage to Survival Flight's business relationship developing in Washington County. Defendant Newton assured Survival Flight Senior Leadership he would simply attend the scheduled meeting with the Holmes County stakeholders to maintain the relationship and would not discuss or agree to Survival Flight operations in Holmes County.

36. Despite Defendant Newton's assurances and against Survival Flight's interests, Defendant Newton fraudulently promised, without approval or authority, Holmes County stakeholders that Survival Flight would bring air ambulance operations to Holmes County, which

8

damaged Survival Flight's relationship with Washington County. (*See* Ex. 9, Correspondence from Holmes County Sheriff).

37. In or around March 2026, Survival Flight began negotiating the purchase of an aircraft hanger in Dothan, Alabama which Survival Flight had been operating under a long-term lease agreement for several years. During these negotiations, Defendant Newton represented to the Dothan stakeholders that another company was coming into the area and would pay double for the property. Thereafter, the Dothan stakeholders refused to sell the property to Survival Flight.

38. Survival Flight would not have continued to engage Defendant Newton or provided him access to its confidential and proprietary information, resources to develop business and goodwill on behalf of the company, or access to key industry contacts, had it known he would not honor the terms of his Consulting Agreement or his other obligations owed to Survival Flight. For these and other reasons, the restrictive covenants in the Consulting Agreement are reasonable in scope and no broader than necessary to protect Survival Flight's legitimate business interests in the protection of customer relationships and goodwill, protection of confidential information, and protection against unfair competition.

### C. Defendant Newton's post-termination misconduct

39. Upon learning of Defendant Newton's misconduct and unfair and unlawful competition with Survival Flight, Survival Flight terminated Defendant Newton's relationship with Survival Flight on April 14, 2026.

40. Shortly before Survival Flight terminated Newton, Newton began working for another air ambulance company that is a direct competitor of Survival Flight.

41. On or about April 17, 2026, Survival Flight sent Defendant Newton correspondence confirming Newton's termination and demanding he immediately (1) cease and desist performing

9

any services for or on behalf of Survival Flight and discontinue representing [himself] as affiliated with, authorized by, or acting on behalf of Survival Flight, in any capacity, (2) return all Survival Flight property and electronic information in his possession, custody, or control, and (3) cease and desist from interference with Survival Flights' actual or prospective contractual or business relationships with customers, employees, vendors, contractors, or other third parties. (Ex. 10, 4/17/26 Letter). Survival Flight requested all Survival Flight property and electronic information be returned by April, 27, 2026. (*Id.* at 3).

42. Defendant Newton did not respond to this correspondence.

43. On or about April 15, 2026, Defendant Newton solicited the landlord of Survival Flight's hanger in Ardmore, Tennessee. Defendant Newton knew Survival Flight has an existing 20-year lease agreement regarding this hanger. Defendant Newton informed Survival Flight's landlord that he and "his partner" wanted to purchase the Ardmore, Tennessee hangar because he was starting his own air ambulance company under Blue Lake Holdings, LLC. Further, Defendant Newton informed the landlord that Survival Flight was "going under" and would be "closing down the Ardmore base because it wasn't doing well." Defendant Newton knew these statements were false and misleading. Defendant Newton contacted Survival Flight's landlord in an attempt to interfere with Survival Flight's existing lease agreement and retain or transfer the lease agreement to himself and/or another company.

44. On April 30, 2026, Defendant Newton contacted Jesse Moats, a current employee of Survival Flight, informing Moats that he was working with a direct competitor of Survival Flight to obtain a 14 CFR Part 135 Air Carrier and Operator Certificate. This certificate provides Federal Aviation Administration ("FAA") authorization of on-demand and commuter air charter operations, allowing operators to legally conduct commercial air transport of passengers or cargo. Thus,

obtaining a 14 CFR Part 135 Air Carrier and Operator Certificate is essential for conducting helicopter air ambulance operations as Defendant Newton was seeking to do with Survival Flight's direct competitor. During this conversation, Defendant Newton solicited Jesse Moats to leave Survival Flight and join Defendant Newton and/or a competing company.

45. In or around April 2026, one of Survival Flight's subsidiary grant sole source contracts in Georgia was up for renewal. The renewal of this sole source contract is extremely valuable as it designates Survival Flight as the only provider of helicopter air ambulance services in the Southwest Region of Georgia and is awarded without a competitive bidding process based on Survival Flight's existing infrastructure and substantial investments in the region. On April 8, 2026, prior to Defendant Newton's termination from Survival Flight, the subsidiary informed Defendant Newton that the sole source contract would need to be posted to the public and if no objections were received in fifteen days, the contract would be awarded to Survival Flight on or after April 24, 2026. (Ex. 11, 4/8/26 Larson Email to Newton, p. 2).

46. On May 5, 2026, after Newton's termination from Survival Flight and after the deadline for objections to Survival Flight's sole source award, Survival Flight was informed there had been a protest to the sole source award and funds could not be awarded to Survival Flight. (Ex. 12, 5/5/26 Samples Email, pp. 1-2). It appears that Defendant Newton contacted a direct competitor of Survival Flight, using knowledge and relationships developed while at Survival Flight, to protest the sole source award and to unfairly compete with Survival Flight.

47. On May 21, 2026, having discovered Defendant Newton's post-termination misconduct, Survival Flight's counsel sent, via overnight mail and email, a Final Demand to Immediately Cease & Desist and for Information and Assurances to Defendant Newton. (Ex. 13, 5/21/26 Final Cease & Desist Letter to Newton).

48.     In the Final Cease & Desist Letter, Defendant Newton was informed that Survival Flight was aware that (1) Defendant Newton had solicited at least one of Survival Flight's landlords requesting it end its business relationship with Survival Flight and contract with Defendant Newton and/or another company and, (2) Survival Flight was aware that Defendant Newton had solicited at least one current employee of Survival Flight to leave his employment and join a Survival Flight direct competitor and that Defendant Newton was working with a direct competitor to obtain a 14 CFR 135 Air Carrier and Operator Certificate. (*Id.*)

49.     In the Final Cease & Desist Letter, Defendant Newton was asked to confirm by May 27, 2026, (1) the identities of all Survival Flight customers, prospective customers, employees, vendors or other third parties he has communicated with since April 14, 2026, (2) the details of any oral communications he had with Survival Flight customers, prospective customers, employees, vendors, or other third parties since April 14, 2026 and the dates of same, (3) that he will not contact, solicit, or disparage Survival Flight customers or prospective customers, employees, vendors or other third parties he communicated with or had knowledge of during his consulting relationship with Survival Flight through April 14, 2028, (4) he will not disclose any Survival Flight confidential information at any point in the future without written approval from Survival Flight, (5) the steps he has taken to assess whether he is in possession, custody, or control of any Survival Flight confidential or business information, (6) he will abide by all obligations set forth in the Consulting Agreement, (7) provide copies of all communications exchanged with any Survival Flight customer or prospective customers, employees, vendors, other third parties, since April 14, 2026, and (8) provide copies of all communications before April 14, 2026 exchanged with any employees or representatives of the Survival Flight direct competitor Defendant Newton currently works for. (*Id.*).

50. Finaly, Defendant Newton was informed of his obligations "to preserve all potentially relevant evidence related to the prior relationship with Survival Flight, [his] activities since the termination of [his] engagement from Survival Flight, and other maters set forth in [the] letter" "including all electronically stored information ("ESI") in [his] possession, custody, and/or contrary that in any way relate to the matters described above". (*Id.*)

51. On May 22, 2026, Defendant Newton contacted counsel for Survival Flight via telephone and acknowledged receipt of the letter. During that telephone call, Defendant Newton stated he had just received the letter in the mail and would provide all documents requested by June 5, 2026. Counsel for Survival Flight informed Defendant Newton that if he was willing to put those representations in writing – that Defendant Newton would provide everything requested by a date certain – then counsel for Survival Flight would communicate the request for an extension to Survival Flight.

52. After that telephone call, Defendant Newton wrote to counsel for Survival Flight that he "*intend[s]* to provide everything [Survival Flight] ask[s] for", despite Defendant Newton's representations during the telephone call. (Ex. 14, 5/22/26 Email from Newton to Tarney) (emphasis added).

53. On May 27, 2026, counsel for Survival Flight informed Defendant Newton that he had not heard anything further from Defendant Newton since May 22, 2026 and the May 27, 2026 deadline in the Final Cease & Desist Letter remained in place. (Ex. 14, 5/27/26 Email from Tarney to Newton).

54. Defendant Newton failed to comply, or provide any of the requested items or assurances, by the May 27, 2026 at 5:00 p.m. ET deadline.

55. Not only did Defendant Newton fail to comply by the May 27, 2026 deadline in the Final Cease & Desist Letter, but he also failed to comply with his own promise that he would provide the requested items by the June 5, 2026 date.

56. Defendant Newton's failure to respond or abide by the April 17, 2026 and May 21, 2026 cease and desist correspondence, coupled with his ongoing conduct, further confirms he refuses to abide by his obligations and refrain from interfering with Survival Flight's business relationships and with its employees.

57. Defendant Newton's conduct places Survival Flight at imminent risk of immediately losing substantial business and relationships, losing current and prospective customers, partners, and employees by furnishing, using, and disclosing them at a competitor company and/or Rotor One or to unlawfully and unfairly benefit a competitor company, Rotor One and/or himself.

58. Survival Flight stands to suffer, and will continue to suffer, irreparable harm for which no adequate remedy at law exists given that Survival Flight's current loss is presently impossible to quantify.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

59. Survival Flight incorporates by reference all allegations in the preceding paragraphs as if fully restated herein.

60. Defendant Newton entered into, signed, and executed a valid and enforceable Consulting Agreement with Survival Flight.

61. The parties continued to perform under the contract terms until the termination of Defendant Newton's engagement with Survival Flight on April 14, 2026.

62. The Consulting Agreement was supported by adequate consideration that would be and was retained by Newton.

63. The obligations that Newton agreed to be bound by were sought in good faith and were supported by legitimate business interests justifying the restrictions, including protecting and safeguarding the substantial relationships and goodwill Survival Flight has fostered with longstanding customers, as well as preventing unfair competition and illegal conduct.

64. The covenants Newton agreed to through the Consulting Agreement are reasonably necessary, narrowly tailored, and no greater than necessary to protect Survival Flight's legitimate and protectable business interests, especially considering: that he would have had, and in fact had, direct and instrumental contact with Survival Flight's existing and potential customers, vendors, and industry relationships cultivated over many years; Survival Flight's longstanding and near-permanent customers and customer relationships that he inherited from Survival Flight, was introduced to by Survival Flight, and/or with whom he was provided the means and resources to develop by Survival Flight; the reasonable temporal limitations; the nature of the services he would be offering and provided; that the restrictions would not unreasonably inhibit his ability to secure gainful employment in his chosen occupation or impose undue hardship; and the lack of harm to the public.

65. Absent these restrictions, Survival Flight cannot adequately protect its legitimate interests in its confidential and proprietary information; goodwill; industry relationships; existing and potential customer relationships; and other business assets. Further, Survival Flight's legitimate interests would be compromised, and competitors like Rotor One and others could unfairly compete.

66. Survival Flight performed all required terms, conditions, covenants, and promises under the Consulting Agreement or otherwise owed to Newton.

67. Defendant Newton breached the obligations he owed to Survival Flight, including his non-compete, non-solicitation, and confidentiality covenants, and other obligations in various ways, including by:

a. planning, organizing, assisting and/or working for and on behalf of himself and/or direct competitors of Survival Flight, including Rotor One and others, while engaged by Survival Flight and continuing after the termination of his business engagement;

b. failing to faithfully devote all productive business time, energy, and skill to performing his agreed upon duties, including assisting a direct competitor and diverting customers and/or business opportunities from Survival Flight, starting while engaged by Survival Flight and continuing to do so thereafter;

c. using Survival Flight's resources for the benefit of Rotor One, another direct competitor, and/or himself during and after his engagement with Survival Flight;

d. working for himself and/or a direct competitor while performing and/or managing the same functions he performed and/or managed at Survival Flight in the same markets;

e. directly and indirectly soliciting, contacting, calling upon, or attempting to solicit, contact, or call upon, one or more Survival Flight customers he served while engaged by Survival Flight, or that Survival Flight served, to which he had access to resources to develop these business relationships and became aware of through his engagement with Survival Flight;

f. directly and indirectly soliciting, hiring, recruiting, and attempting to solicit, persons employed by or who had contracted with Survival Flight, whom he worked with and/or whom he had personal contact with during his engagement by Survival Flight;

g. directly and indirectly using, disclosing, taking, destroying, reproducing, and concealing Survival Flight's Confidential Information and business information to benefit a direct competitor, himself, and/or third parties during and after his engagement by Survival Flight without authorization;

h. making false and/or misleading statements to customers, potential customers, partners, base operation decision-makers, and/or others in the industry that Survival Flight would be establishing operations in a particular market, which was outside the scope of his relationship and authority with Survival Flight and in direct conflict with Survival Flights interests; and

16

i. Newton's years-long planning, creation, and implementation of Rotor One and/or Blue Lake Holdings as a direct competitor(s) of Survival Flight, while still engaged by Survival Flight.

68. Because Newton breached various restrictive covenants and other obligations in the Consulting Agreement that contained specified terms, the length of the covenants shall be further extended by the period of time between the inception of such a breach and the date a remedy is awarded.

69. As a direct and proximate result of Defendant Newton's breaches, Survival Flight has suffered and will continue to suffer irreparable injury, damages, and other harm as a result of losing industry relationships, existing and potential customer relationships, competitive advantages, business opportunities, and goodwill.

### SECOND CLAIM FOR RELIEF
### Breach of Fiduciary Duties

70. Survival Flight incorporates by reference all allegations in the preceding paragraphs as if fully restated herein.

71. As its Director of Business Operations, Defendant Newton owed various fiduciary duties to Survival Flight, including the duty of loyalty, duty of care, duty of obedience, duty of good faith, duty of confidentiality, duty to disclose, duty to avoid conflicts of interests, and duty to keep accurate records, as well as to avoid engaging in activities undermining or inconsistent with Survival Flight's business interests, and to avoid acting for his own interests (or the interests of a competitor) at Survival Flight's expense.

72. Defendant Newton repeatedly breached his fiduciary duties while still engaged by Survival Flight, including by his involvement with competing business entities, Rotor One, Blue Lake Holdings, and others; his solicitation and recruitment of Survival Flight employees to leave Survival Flight for Rotor One and/or other competitor; making false statements to industry contacts,

17

existing and potential customers, and/or others in the industry that Survival Flight would be establishing operations in a particular market, against Survival Flights interests; and his misuse of Survival Flight resources and business relationships to further a competitive business for his own personal benefit.

73. Defendant Newton's disloyal conduct has caused irreparable harm and significant damages to Survival Flight. Survival Flight accordingly seeks to recover all available monetary, injunctive, and non-monetary relief, at law or in equity, including Defendant Newton's forfeiture or disgorgement of all compensation paid to him by Survival Flight during his periods of his disloyalty in an amount no less than $207,000.00; Survival Flight's loss of business that Defendant Newton diverted away from Survival Flight while he remained engaged by Survival Flight; and financial gains or cost savings enjoyed by Defendant Newton, Rotor One and/or Blue Lake Holdings due to Defendant Newton's disloyal conduct.

74. Survival Flight further seeks to recover all other available damages—whether direct, consequential, or restitutionary — according to all applicable measures, as well as exemplary damages as a result of Defendant Newton's willful and malicious conduct.

### THIRD CLAIM FOR RELIEF
### Tortious Interference with Business Relationships

75. Survival Flight incorporates by reference all allegations in the preceding paragraphs as if fully restated herein.

76. Survival Flight has valid and existing and/or prospective economic relationships, business relationships, and opportunities with existing and prospective customers and employees, many of whom Defendant Newton worked with before the termination of his engagement with Survival Flight, and which at all relevant times Defendant Newton had actual and constructive knowledge.

18

77. Despite Defendant Newton's actual and constructive knowledge of these relationships and opportunities, he intentionally, willfully, maliciously, and without privilege or justification interfered with Survival Flight's existing and/or prospective economic relationships, business relationships, and opportunities and induced or otherwise caused a failure to enter into, disruption, termination, and violations of various opportunities and obligations with Survival Flight.

78. As a direct and proximate result of Defendant Newton's conduct, Survival Flight has and will continue to suffer irreparable harm and substantial damages.

79. Survival Flight requests temporary, immediate, preliminary, and permanent injunctive relief to prevent further interference and other harm. These remedies would not be available, effective, or adequate except through this action. In addition, Survival Flight seeks any other available relief and damages allowed by law or that this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**Tortious Interference with Contract**

80. Survival Flight incorporates by reference all allegations in the preceding paragraphs as if fully restated herein.

81. Survival Flight entered into valid and enforceable contracts with customers, landlords, subsidiaries, employees, or others in the industry, which at all relevant times Defendant Newton knew of, had in his possession, and/or were provided by Survival Flight, and/or should have known under the circumstances.

82. Defendant Newton intentionally, willfully, maliciously, and without privilege or justification, interfered with and instigated breaches of Survival Flight's contractual relationships with customers, landlords, subsidiaries, employees, or others in the industry, and induced or otherwise caused them not to enter into, disrupt, and violate their contractual obligations owed to Survival Flight.

19

83. As a direct and proximate result of Defendant Newton's conduct, Survival Flight has and will continue to suffer damages, including irreparable harm for which Survival Flight is entitled to temporary, immediate, preliminary, and permanent injunctive relief to prevent further interference and other harm. Absent such relief, any award would be ineffectual. In addition, Survival Flight seeks all other available damages and relief allowed by law, including punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Survival Flight demands the following relief:

A. Temporary, immediate, preliminary, and/or permanent injunctive relief:

1. Enjoining Defendant Newton, directly or indirectly through Rotor One, Blue Lake Holdings, a direct competitor, and/or himself, from directly or indirectly soliciting, contacting, calling upon, or attempting to solicit, contact, or call upon, existing or potential Survival Flight customers, potential customers, or business relationships in violation of Newton's Consulting Agreement.

4. Enjoining Defendant Newton, directly or indirectly directly or indirectly through Rotor One, Blue Lake Holdings, a direct competitor, and/or himself, from directly or indirectly soliciting, hiring, recruiting, or attempting to solicit, hire, or recruit, persons employed by or who had contracted with Survival Flight.

5. Enjoining Defendant, or those acting in concert with him from directly or indirectly attempting to induce any customer, potential customer, or business contact to terminate its relationship with Survival Flight.

6. Ordering that the durational restrictions for Newton's non-compete and non-solicitation provisions are tolled and/or equitably extended from the date of inception of the breaches through when a remedy is awarded for such breaches.

B. Disgorgement, recoupment, and repayment of Defendant Newton's compensation from when his unlawful conduct began of at least $207,000;

C. An award of compensatory damages in an amount exceeding $75,000;

D. An award of any available exemplary and/or statutory damages;

E. An award of punitive damages;

20

F.     An award of pre-judgment interest and post-judgment interest;

G.     An award of attorney's fees; and

H.     Any other relief this Court deems just or proper.

**RESPECTFULLY SUBMITTED** this 18th day of June, 2026.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Courtney Williams*
Courtney Williams, BPR No. 037140
Alyssa Wright, BPR No. 036750
4020 Aspen Grove Drive, Suite 500
Franklin, Tennessee 37067
Phone: 615-772-9000
Fax:     615-970-7490
ccwilliams@grsm.com
awright@grsm.com

Tyler Tarney (*application for pro hac vice admission forthcoming*)
41 South High Street, Suite 2495
Columbus, Ohio 43215
T: (614) 917-1953
ttarney@grsm.com

*Attorneys for Plaintiff*